IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

UNITED STATES OF AMERICA,   ) Criminal Case No. 19-00022
                             )
               Plaintiff,  )
                             )
        vs.               )
                             )
DEXTER WILTON LONG,        )
                             )
             Defendant.  )

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JOAQUIN V.E. MANIBUSAN, JR.,
MAGISTRATE JUDGE
AUGUST 26, 2019; 9:09 A.M.
HAGATNA, GUAM

**Status Hearing**

Proceedings recorded *electronically*, transcript produced by computer.

Veronica F. Flores, CSR-RPR
Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910
veronica_flores@gud.uscourts.gov

APPEARANCES


Appearing on behalf of plaintiff:


**OFFICE OF THE UNITED STATES ATTORNEY**
**BY: LAURA C. SAMBATARO, AUSA**
108 Hernan Cortez Avenue
Sirena Plaza, Suite 500
Hagatna, Guam 96910
(671) 472-7332


Appearing on behalf of defendant:


**LAW OFFICE OF WILLIAM L. GAVRAS**
**BY: WILLIAM L. GAVRAS, ESQ.**
101 Salisbury Street
Dededo, Guam 96929


ALSO PRESENT:

Dexter Long, Defendant



-----------------------------------------------------

I N D E X


                                                    Page


Trial set for October 17, 2019 at 10:00 a.m.          21

Veronica F. Flores, CSR-RPR
Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910
veronica_flores@gud.uscourts.gov

1          **August 26, 2019; 9:09 a.m.; Hagatna, Guam**

2                              * * *

3                    (Beginning of transcription.)

4

5          THE CLERK:  Criminal Case No. 19-00022,

6    *United States of America versus Dexter Wilton Long*;

7    Status hearing.

8              Counsel, please state your appearances.

9              MS. SAMBATARO:  Good morning, Your Honor,

10   assistant United States attorney Laura Sambataro on

11   behalf of the government.

12             THE COURT:  Good morning.

13             MR. GAVRAS:  William Gavras for the

14   defendant, Your Honor.

15             THE COURT:  Good morning.  The Court notes

16   the presence of Mr. Long, and I guess we'll hear from

17   Mr. Gavras on our status.

18             MR. GAVRAS:  Your Honor, I think my client

19   would like to have new Counsel.

20             THE COURT:  Uhh...

21             THE DEFENDANT:  Excuse me, Your Honor,

22   please, I need some -- I need some help from you and I

23   need some clarity in obtaining help from you.  Since --

24             THE COURT:  Well --

25             THE DEFENDANT:  Please --

1          THE COURT:  Go ahead, go ahead, go ahead --

2          THE DEFENDANT:  May I be able to speak,

3    please, Your Honor, with all due respect to you and the

4    Court, attorney Gavras has been quite busy lately and

5    since my last Court hearing, I haven't been able to have

6    any type of correspondence with him.  He's done a good

7    job in making some arrangements with the U.S. Attorney's

8    office and with the current U.S. Attorney... district

9    attorney over there, but my family and I are in a dire

10   strait and need for assistance and clarity that you may

11   -- can help us with.

12          Now, I was currently under the supervision

13   of probation and they have informed me that bound by

14   statute, that you -- that I'm unable to be able to get

15   back to my family to be able to help them in need --

16          THE COURT:  That's --

17          THE DEFENDANT:  And --

18          THE COURT:  That's why we appoint a lawyer

19   for you, sir, so you can get proper legal advice.

20          THE DEFENDANT:  That -- that doesn't seem to

21   be happening here, Your Honor.  What's happening is in

22   -- in -- in a short period of time, I have a

23   three-your-old daughter, I have a Filipino wife, I've

24   been here in Guam for nine years.  Listen, just listen

25   to me.  This is my home.  I am not a flight risk because

```
 1   I have no where to fly to.  You understand what I'm
 2   saying?
 3               (Court and defendant overlapping.)
 4               THE DEFENDANT:  Let me -- Your Honor --
 5               THE COURT:  (Inaudible.)
 6               THE DEFENDANT:  You've been a man that's
 7   been looking out for my best interest.  And you've taken
 8   my plea of guilty and taken total responsibility for
 9   what I've done and entered a not guilty plea for me.  So
10   in a sense, that is a man that's looking out for my best
11   interest, supposedly.
12               Now, listen, just hear me out.
13               THE COURT:  I already heard you --
14               THE DEFENDANT:  -- Your Honor --
15               (Court and defendant overlapping.)
16               THE DEFENDANT:  I've had a violation --
17               THE COURT:  (Inaudible.)
18               THE DEFENDANT:  I need to get back to my
19   family.  That's the most important thing.
20               THE COURT:  Well, that's why --
21               THE DEFENDANT:  I violate -- I can't get
22   that.  Listen to the attorneys I've had:  I've had John
23   Gorman, I've had Mr. Moots, I've asked another attorney,
24   Teker, that declined.  Now listen, now pay attention.
25   I've had Ecube, all right?  I've had him.  Right?  He
```

hasn't talked to me in three weeks. Since the last time that I come to Court, he has not made one correspondence with me. What would you think that's like?

Let's move on. We'll just put that and let that marinate. Now listen to the attorneys that I had: John Gorman, Jeffrey Moots, Ecube, I have him, William Gavras and I have attempted to reach out to another attorney, all --

MR. GAVRAS: Joe Razzano.

THE DEFENDANT: Joe, yeah. I forgot Razzano. All right. Thank you for that. Those attorneys I've had. None of them have stayed more than a week with me. He has stayed three weeks, but of course he's had a lot of things going on. This is my discovery, 50 pages. This is a 50-page discovery. That's all it is. Not -- exclude the pictures; 50 pages of discovery.

Here's my plea now, the government has come to me with a plea that you expedited. You told them to expedite the plea. Here's the plea. We have some technicalities in it. The U.S. district attorney trying to take my job from me, that's one, where I can't support my family. At least they've gave me my credentials back. They had taken that from me. So there's some language in here that's not good for us.

```
 1    All right?  Now, this is what they want to do, the U.S.
 2    district attorney, one thing they --
 3              THE COURT:  Sir --
 4              THE DEFENDANT:  Listen now --
 5              THE COURT:  We have here today -- go to
 6    trial --
 7              THE DEFENDANT:  -- listen --
 8              THE COURT:  (Inaudible.)
 9          (Court and defendant overlapping.)
10              THE DEFENDANT:  It's kind of sad if you're
11    not around your children and you're using drugs.  Okay.
12    You will always want to leave something behind for our
13    kids to look up to us; otherwise, we don't want them in
14    the same position that we do.  That's you, I'm reading a
15    quote from you.  From the person that you let back out,
16    who had made a mistake and a violation of selling meth
17    on a naval base.  This is your quote.
18              THE COURT:  Sir, we're here to determine --
19              THE DEFENDANT:  I'm trying to get back to my
20    family.
21          (Court and defendant overlapping.)
22              THE DEFENDANT:  -- try to get an attorney to
23    help me.  Help us.
24              THE COURT:  All right --
25              THE DEFENDANT:  That's my wife right here
```

Case 1:19-cr-00022   Document 54   Filed 11/02/19   Page 7 of 23

1    and three-year-old child, help us though, let me be

2    released back to my family and get an attorney.

3                   THE COURT:  I've already made a decision to

4    detain you.

5                   THE DEFENDANT:  I know that, I'm asking you

6    to reconsider that.

7                   THE COURT:  Well, the reconsideration is

8    denied based on the record.

9                   THE DEFENDANT:  What record is that?  I have

10   no felonies.  I don't have no violent crimes in my

11   background.

12                  THE COURT:  I've already explained on the

13   record, sir.

14              (Defendant speaking over the Court.)

15                  THE DEFENDANT:  -- on the informational

16   report, on the informational report --

17                  THE COURT:  (Inaudible) are closed.

18                  THE DEFENDANT:  Look, if I look at that, you

19   let -- here's another case, you released, August 7,

20   2019, Lucille Torres, 42, 608 grams of meth.  Conspiracy

21   to possess to intent to distribute.  You released her.

22                  THE COURT:  Released her today?

23                  THE DEFENDANT:  2019 --

24                  THE COURT:  Today?

25                  THE DEFENDANT:  What have I done?  I'm not

an endangerment to the community.  When they went to my

home, there was no guns, no nothing.  How am I an

endangerment to the community?  I'm 58 years old with a

three-year-old child.  Are you going -- a man that's

just (inaudible) about children, are you going to let

mine go in the street?  How do I look at that?  Am I --

is it because of my race?  Tell me if it is.  Tell me

the reason it is, is because of my race?  Because I'm

not an endangerment to this community.  I've been in

this community nine years.  Tell me what I'm an

endangerment to.  Tell me.  I have no guns, no violent

crimes.  If I'm sentenced, they've already recommend me

to be released for presentencing.  He's just telling me

now -- she doesn't want to do anything.  I've tried -- I

-- I've taken total responsibility.  I've -- I'm trying

to work with the U.S. district attorney's office in

helping with this responsibility, but no one wants to

help me.  You think detaining me is the best thing to do

while my family goes to the street when you're releasing

people to their children -- to their families who've

already ten times more the drugs that I have,

conspiracy, they want to charge me just with attempted

possession of more than 50 grams.  And the -- in the

discovery, the net weight -- the gross weight is

220 grams what they want to charge me, not the net.  I

```
 1   have not been able to get the full discovery to tell me
 2   the net.  You're not being fair to me.  I'm just asking
 3   fairness and I'm seeing -- I mean I'm seeing it in
 4   Court.  You're doing it daily, but I'm an endangerment.
 5   And that's your -- that's your -- stands but it's not
 6   fair.
 7                   THE COURT:  Sir, if --
 8                   THE DEFENDANT:  It's not fair and you know
 9   that.
10                   THE COURT:  If you want to appeal, you can
11   always appeal the ruling to the district judge.
12                   THE DEFENDANT:  I have no attorney to help
13   me.
14                   THE COURT:  Well, that's why I'm trying to
15   get you an attorney.
16                   THE DEFENDANT:  Everyone you've given me has
17   not done one thing to help me.
18                   THE COURT:  Mr. Gavras --
19                   THE DEFENDANT:  -- to get back to my family
20   and you're the only one that can do that.
21                   THE COURT:  The only way --
22                (Defendant speaking over the Court.)
23                   THE DEFENDANT:  -- supervise or probation.
24                   THE COURT:  -- to detain you.
25                   THE DEFENDANT:  Don't give me statute.
```

1  You're not bound -- you're bound by human decency.

2  That's what you're bound by and I see that.  But you

3  stand before me and tell me no, is what you're doing.

4          THE COURT:  Sir, you're just like any other

5  human being that I have compassion for you just like --

6          THE DEFENDANT:  We'll try find Counsel of

7  our own.  Don't appoint me anything.  Just give us a

8  week.  Give another status hearing in a week, and

9  hopefully I can find someone.  Everybody you've given me

10 -- and look, they're all of a different ethnic

11 background that's behind it.  You haven't given -- Ecube

12 is the only one -- a female of color.  I don't want --

13 I'm calling it what it is.

14          MR. GAVRAS:  Your Honor, I have to take

15 exception.

16          THE COURT:  Sir, a lot of the lawyers --

17          THE DEFENDANT:  I don't care what you take

18 exception to.

19          MR. GAVRAS:  Your Honor, I must take

20 exception to what my -- this individual said about me.

21 First of all, and the only thing I'll say is, I was in

22 constant -- near constant contact with him up until two,

23 three weeks ago when we met with the U.S. attorney's

24 office.  Prior to that, I was meeting with him or his

25 wife, speaking to him or meeting with his wife or

1   meeting with him at least every other day, practically.

2   I mean, and he had no problems with -- he was full of

3   compliments.  We had our meeting, there's been nothing

4   to report.  Now I'm accused of being a racist because of

5   that --

6            THE DEFENDANT:  I have not --

7            MR. GAVRAS:  So, I would ask that I be

8   removed from the case.  I was just asked today to inform

9   the Court that he wanted to be removed, but I don't see

10  how we have a tenable relationship at this point.

11           THE DEFENDANT:  He's been great, Your Honor.

12  Prior to the three weeks, yes, he had my discovery, he

13  set up some arrangements.  Now he -- I'm not assuming --

14  saying that he's racial towards me and I told him that

15  prior.  But I'm -- but if anybody looks out -- on the

16  outside looking in, now he's been great, I told him

17  that, but it's not good for us when we don't hear from

18  someone for three weeks just to say things are moving

19  along, things are positive.

20           Now, if he wants to move because he's -- I

21  didn't call him a racist, I just said look at the racial

22  background with the lawyers I got, and all of them have

23  abandoned me.  He hasn't.  Yes, the week before I came

24  to court, he was working with us, but then once we came

25  to court, nothing.  I'm willing to do whatever

assistance the U.S. district attorney's offering, but I
don't understand what's going on.  I'm in the dark.

THE COURT:  Well, you know, Mr. Long, sir,
we've been trying to appoint an attorney for you.  Most
of the attorneys appointed have indicated that they have
conflicts.

THE DEFENDANT:  I know that.

THE COURT:  So that's why they're not
assisting you.  I appointed Mr. Gavras to represent you.
You don't want him because he hasn't communicated with
you in the last three weeks.

THE DEFENDANT:  Well -- well, what would you
say about that if someone --

THE COURT:  (Inaudible.)

(Defendant speaking over the Court.)

THE COURT:  Lawyers are very busy.

THE DEFENDANT:  I know he's been.  He's been
very busy.  I've been keeping up with his trials.

THE COURT:  They have a lot of cases that
they look after, and unless you're able to retain your
own attorney, you know, you can hire and fire your
attorney.

THE DEFENDANT:  Okay, let's -- who was next
on your list for me?

THE COURT:  Oh, well, let me see, Mr. -- you

```
 1    know I appointed Mr. Gavras to represent you.

 2              THE DEFENDANT:  Who wants to get off now.

 3              THE COURT:  It's not him, it's you, sir.

 4    You come to Court today --

 5              THE DEFENDANT:  Well, he said I said I'm a

 6    racist.

 7              THE COURT:  Because he'd seen -- you

 8    inferred --

 9              THE DEFENDANT:  It's not good Your Honor --

10              THE COURT:  -- you inferred racist remarks,

11    sir.  You inferred that he's a racist in your remarks.

12              THE DEFENDANT:  I'm not saying -- just tell

13    me, Your Honor, just -- you just tell me, of all -- what

14    I just -- countless cases of where you've let people

15    back to their families with worse offenses than me.  You

16    tell me.

17              THE COURT:  Sir --

18              THE DEFENDANT:  Just tell me, Your Honor.

19    Why not?  Why not?

20              THE COURT:  I tell you what, you know, when

21    you have an attorney, sir, you know, you have to

22    understand --

23              THE DEFENDANT:  Okay, fine, I understand an

24    attorney.  But I'm asking you, Your Honor.

25                   (Speaking over each other.)
```

1          THE COURT:  That if I appoint an attorney

2    for you, this attorney might be busy also, he might --

3          THE DEFENDANT:  That's fine, Your Honor.

4          THE COURT:  It's almost like you want an

5    attorney --

6          THE DEFENDANT:  (Overlapping.)  But I'm

7    asking you, not the attorneys.

8          THE COURT:  I can't assist you --

9          THE DEFENDANT:  -- Your Honor, and what

10   you've done in your cases --

11          THE COURT:  -- your attorney will assist

12   you.

13          THE DEFENDANT:  I know that, Your Honor, I

14   appreciate that.  But I'm asking clarity from you, of

15   your cases, July 30th, conspiracy, tested seven times.

16   One person, you let back out violating nine times.

17   Nine.  And you released him back to their families.  I'm

18   asking you, Your Honor, for one violation --

19          THE COURT:  The record will speak for

20   itself, sir.

21          THE DEFENDANT:  -- back to probation, back

22   for testing.  I've been open to them.  They have a

23   folder of all -- I never had a felony.  I -- I have one

24   misdemeanor.  If they can verify being here for nine

25   years that the governor pardoned me and it's expunged.

My wife has gone to them.  And they recommended that --
they didn't give enough time to develop my character.
That they would recommend if I be sentenced, that they
would recommend me back to my family.  Nine times.
Seven times.  Four times.  And you still -- I'm asking
one time.  That's okay.  I just -- that's the clarity
I'm asking from you, not from an attorney.  I'm asking
from your Court.

THE COURT:  So Mr. Gavras, in terms of the
representation of Mr. Long, are you able to work with
him?  Or -- or not?

THE DEFENDANT:  He's a fine attorney.  He's
-- he's -- he's --

MR. GAVRAS:  Judge, this is the -- I -- I
can work with him.  Thank you.

THE DEFENDANT:  Thank you.

THE COURT:  The reason I ask that, you know,
Mr. Long, sir, for many reasons:  I hate to lose
Mr. Gavras who has been helping you and you seem to
indicate that he's done pretty good for you, other than
the last three weeks.  We have to be, in a sense,
reasonable, if I can ask you to be that.  You know,
lawyers are very, very busy.  They just cannot talk to
you every day, they cannot see you every day.  Sometimes
--

```
 1                  THE DEFENDANT:  I'm not asking every day,
 2    just once a -- once a week.  We agreed to that but --
 3                  THE COURT:  They are -- and, sir, you know,
 4    they might not even have the time to see you once a
 5    week.
 6                  THE DEFENDANT:  Not see me, we've already
 7    made the arrangement that he can't see me.
 8                  THE COURT:  If --
 9                  THE DEFENDANT:  But --
10                  THE COURT:  -- Mr. Gavras.
11                  THE DEFENDANT:  But Your Honor --
12                  THE COURT:  -- if I remove Mr. Gavras, I'm
13    afraid that we might not find an attorney who doesn't
14    have a conflict.
15                  THE DEFENDANT:  Okay.  I --
16                  THE COURT:  So -- so that's the basis for
17    me.  And you know --
18                  THE DEFENDANT:  Yes.
19                  THE COURT:  -- asking Mr. Gavras again, sir,
20    if he's willing to work with you.
21                  THE DEFENDANT:  What I'll do --
22                  THE COURT:  If I relieve him, we may go
23    through this process many times and we won't find an
24    attorney that doesn't have a conflict.
25                  THE DEFENDANT:  That's true.
```

1          THE COURT:  So the fortunate part about

2    Mr. Gavras is, despite the representations that have

3    been made to the Court today, I've asked him to

4    reconsider and he says he's willing to work with you.

5          THE DEFENDANT:  I understand, but you still

6    haven't -- thank you.

7          THE COURT:  Mr. Gavras, sir --

8          THE DEFENDANT:  But you sidestep --

9          THE COURT:  Mr. Gavras --

10          THE DEFENDANT:  But you sidestep my request

11    --

12          THE COURT:  Mr. Gavras is a very capable

13    attorney; very capable attorneys here, so I hate for you

14    to lose a very capable attorney.

15          THE DEFENDANT:  I've lost a lot of good

16    ones, but I still -- you sidestep my challenge to you.

17          THE COURT:  Well -- you can always ask to

18    have me removed from the case.  If you're dissatisfied,

19    you can always appeal my ruling.

20          THE DEFENDANT:  Record after record.

21          THE COURT:  But Mr. Gavras, how much time do

22    you need now?

23          MR. GAVRAS:  Judge, I think we would ask for

24    a Trial Scheduling Order at this time.

25          THE DEFENDANT:  I'm not interested in a

1    trial.  I just want to plead guilty.

2           MS. SAMBATARO:  And, Your Honor, I would say

3    that Mr. Gavras and I have engaged in plea discussions

4    and we are -- you know, sometimes clients don't always

5    see what's going on behind the scenes between a

6    prosecutor and a defense attorney, but that's -- I think

7    we're asking for Trial Scheduling Order and, you know,

8    while those deadlines are going on, we're going to

9    continue to try to iron out the details of a plea

10    agreement that is fair to both sides.  That is our goal

11    given Mr. Long's desire to plead guilty.

12           THE DEFENDANT:  Thank you.

13           THE COURT:  All right.  So let me just see

14    if I got -- explain the situation, Mr. Long.  You've

15    indicated your desire to enter a guilty plea since you

16    made your first initial appearance here.

17           THE DEFENDANT:  Yes.

18           THE COURT:  But I just wanted to make sure

19    that you understood the complete ramification and that's

20    why a lawyer is very important, really.  And your lawyer

21    -- I cannot give you advice.  Your lawyer is the only

22    one that can do that.  And the process to get to a plea

23    generally entails setting the matter for a trial so that

24    in the interim, if a plea can be worked out, a plea will

25    be taken before trial.  But let me go through the

1  process because that's the process and we'll set a trial
2  date.  Can I ask what time frame are you looking at?
3  Taking into consideration perhaps the need to go to
4  trial if things --
5            MR. GAVRAS:  Judge, given the way things
6  would likely turn out, I can pretty much take any date.
7            THE COURT:  Well -- I leave that to you,
8  because you're the defense attorney.
9            MR. GAVRAS:  Early November, Your Honor?
10           THE COURT:  Early November?
11           (Pause.)
12           THE COURT:  Well, let me exclude the time
13  then for purposes of preparation and everything else.
14  So if we make it to November.
15           (Pause.)
16           MR. GAVRAS:  I'm sorry, that's --
17  (Inaudible.)  So we'll (inaudible).
18           THE COURT:  I'm sorry?
19           MR. GAVRAS:  We'll need to do it probably
20  (inaudible) October.
21           (Pause.)
22           THE COURT:  That'll be the week of the 14th?
23  That'll be the first -- second full week in October.
24           (Pause.)
25           So we're looking through the Chief Judge's

1  calendar, to see if it's available.

2          THE DEFENDANT:  My family is going to be in

3  the streets by then.  Thanks a lot.

4          THE COURT:  October 17th at 9:00 a.m. -- at

5  10:00 a.m. for jury selection and trial.  And I guess

6  we'll issue dates, so let me go ahead then and set this

7  matter for trial on October 17th and this date is also

8  past the speedy trial day, right?  Okay.

9          So the Court will set the trial herein for

10 October 17th at 10:00 a.m. and the Court will exclude

11 the period running from today to the trial date from the

12 running of the Speedy Trial Clock.

13         The Court finds that continuing the trial

14 date to this date will meet the ends of justice and the

15 ends of justice will be served by granting a continuance

16 in the trial date to that date and that such a

17 continuance outweighs the best interest of the public

18 and Mr. Long in a speedy trial in that it will provide

19 Mr. Long with an attorney who's not conflicted.  The

20 reasonable time necessary to consider the matter, taking

21 into consideration the time necessary for effective

22 preparation and also taking into account the exercise of

23 due diligence.

24         So the period from today to October 17th at

25 10:00 a.m. is excluded from the running of the Speedy

Trial Clock.  And also in that regard, the Court will

issue a trial -- new Trial Scheduling Order that sets

this trial date and all other trial dates that would be

pertinent to the October 17th trial date.

(Pause.)

MR. GAVRAS:  I'm sorry, Judge.

THE COURT:  I'm just waiting for you.

MR. GAVRAS:  I know, thank you.

(Pause.)

THE COURT:  Are there any other matters that

you want us to address today?

MR. GAVRAS:  Thank you, Judge.

THE COURT:  All right.  Thank you very much.

THE DEFENDANT:  Thank you.

THE COURT:  You're welcome, sir.

THE CLERK:  Please rise.  The Court stands

in recess.

(End of transcription at 9:33 a.m.)

* * *

CERTIFICATE OF OFFICIAL REPORTER


CITY OF HAGATNA      )
                     )  ss.
TERRITORY OF GUAM    )


        I, Veronica F. Flores, Official Court Reporter for
the United States District Court of Guam, do hereby certify
the foregoing pages 1 to 22 to be a true and correct
transcription of the electronically-recorded proceedings held
in the above-entitled matter to the best of my ability.
        Dated this 2nd day of November 2019.


                              /s/Veronica F. Flores
                              Veronica F. Flores